UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:24-cv-01508-SRC |
| v. | ) | |
| | ) | |
| MARY PICCIRILLI, | ) | |
| | ) | |
| Defendant. | | |

**<u>Memorandum and Order</u>**

In 2019, Sam Tehrani and Mary Piccirilli collided while driving different vehicles.  This car accident has led to three cases: one in state court, this case, and another case in this court but before a different judge.  The Court previously denied Piccirilli's motion to consolidate this case with the other federal case and now takes up Safeco's motion for summary judgment.

**I.      Background**

**A.      Factual background**

The Court finds the following facts undisputed for purposes of summary judgment, most of which the parties agree are undisputed.  The Court notes below the facts that the parties dispute.

"On June 17, 2019, Piccirilli was driving in St. Louis County, Missouri, when she was in a motor vehicle collision with nonparty Sam Tehrani."  Doc. 5 at ¶ 2 (citing doc. 5-2 at ¶¶ 1–4); doc. 16 at 2 (The Court cites to page numbers as assigned by CM/ECF.).  The Court notes that Piccirilli objects to labeling Tehrani as a "nonparty" because she filed a motion under Federal Rule of Civil Procedure 12(b)(7) regarding Safeco's improper failure to join Tehrani.  Doc. 16 at 2.  The motion Piccirilli refers to is her omnibus motion that included a motion to remand this

case along with another case in this court.  That motion discussed improper failure to join

Tehrani as a ground for remand.  Doc. 15 at ¶¶ 20–23.  In its order on the omnibus motion, the

Court denied as moot Piccirilli's motion to remand because her motion hinged upon a motion

that the Court had denied.  Doc. 32 at 5.  Since that ruling, Piccirilli has not asserted that Safeco

improperly failed to join Tehrani and Tehrani remains a nonparty in this case.  Accordingly, the

Court overrules Piccirilli's objection.

 The collision with Tehrani "allegedly injured" Piccirilli, doc. 5 at ¶ 3 (citing doc. 5-2 at

¶ 5); doc. 16 at 3, but neither party has offered proof that Piccirilli sustained any injuries or

property damage resulting from the collision, *see* doc. 5 at ¶ 3; doc. 16 at 2.  After the collision,

Piccirilli made a demand for underinsured-motorist coverage (UIM coverage) under an umbrella

policy that Safeco had issued to her in St. Louis County, Missouri.  Doc. 5 at ¶ 1 (citing doc. 5-1

at 8); *id.* at ¶ 4 (citing doc. 5-3 at 1–2); doc. 16 at 1–2.

 The umbrella policy bears a policy number of UZ4780034 and has a policy period of

December 21, 2018, to December 21, 2019.  Doc. 5-1 at 8.  The parties dispute what coverage

this policy provides, so the Court quotes the policy at length and then addresses the parties'

interactions regarding Piccirilli's demand for coverage.  The Court resolves in section III all

policy-interpretation issues.

 The umbrella policy begins with a two-sided declarations page.  *Id.* at 8–9.  The first

page, titled "**SAFECO INSURANCE COMPANY OF AMERICA PERSONAL**

**UMBRELLA POLICY DECLARATIONS**," lists several things, including the insured people,

policy period, limit of liability, and coverages and premiums.  *Id.* at 8.  The coverages-and-

premiums section provides:

| COVERAGES | PREMIUM |
|---|---|
| Basic premium – includes one automobile and primary residence | $  208.00 |
| 2 Additional automobiles in the household | $  140.00 |
| **TOTAL ANNUAL PREMIUM** | **$  348.00** |

*Id.*  The first page also includes an explanation regarding the schedule of underlying insurance,

*id.*, which is included on the back of the declarations, *id.* at 9.  That explanation states in relevant

part:

> You, as defined in the policy contract, agree:
> 1) that insurance policies providing the coverages specified on the back of
> these declarations, if applicable, are in force and will be maintained in force
> as collectible insurance for at least the required minimum limits stated.
> 2) to insure all motor vehicles owned, leased by or used by you.

*Id.* at 8.  The back of the declarations then includes a chart listing several types of policies and

the required minimum limits.  *Id.* at 9.  As relevant here, the chart includes

automobile/motor-vehicle liability:

| Type of Policy | Required Minimum Limits |
|---|---|
| Automobile/Motor Vehicle Liability (Including motor homes) | Single        -  500,000 each occurrence Limit |

*Id.* at 9.  Following the declarations page, the umbrella policy contains a table of contents, *see id.*

at 11, and provides the details of the policy.  Then, the umbrella policy includes an insuring

agreement:

---

### INSURING AGREEMENT

---

> We agree to provide the insurance described in this policy in return for the payment
> of all premiums and subject to the terms, conditions and limitations of this policy.
> The limit of our liability and the premiums are shown in the Declarations, which is
> a part of this policy.

*Id.* at 13.  This insuring agreement is immediately followed by sections for definitions,

coverages, exclusions, and conditions, which in relevant part provide:

3

---
## DEFINITIONS
---

**1.** Throughout this policy, "you" and "your" refer to:
  **a.** the "named insured" shown in the Policy Declarations; and
  **b.** if a resident of the same household:
    **(1)** the spouse
    **(2)** the civil partner by civil union licensed and certified by the state; or
    **(3)** the domestic partner

**2.** "We," "us" and "our" refer to the underwriting Company as shown in the Declarations providing this insurance.

. . . .

---
## COVERAGES
---

### PERSONAL LIABILITY

We will pay the **ultimate net loss** in excess of the **retained limit** that the **insured** is legally responsible for because of covered **bodily injury, personal injury** or **property damage** caused by an **occurrence.**

---

### DEFENSE COVERAGE

When a claim covered by this policy is made against any **insured,** and such claim is not covered by the **insured's underlying insurance** stated in the Declarations or by any other **underlying insurance** available to the **insured**, we will, subject to the **retained limits**, defend any suit against any **insured** even if it is groundless or fraudulent.  And we will investigate, negotiate and settle on behalf of the **insured** any claim or suit as we deem appropriate.

### SUPPLEMENTARY PAYMENTS

. . . .

---
## EXCLUSIONS
---

This policy does not apply to any:

. . . .

**7.** amounts payable under any:

. . . .

4

    **b.** Uninsured Motorists or Underinsured Motorists coverage or any similar coverage, unless this policy is endorsed to provide such coverage as shown in the Declarations.

. . . .

---
**CONDITIONS**
---

. . . .

    **8. Other Insurance.**

    The coverage afforded by this policy is excess over any other insurance available to an **insured**, except insurance written specifically to be excess over this policy. Nothing shall make this policy subject to the terms, conditions, and limitations of such other insurance.

*Id.* at 13, 15, 18–20. The umbrella policy does not define "Declarations" or use the terms "Umbrella Declaration" or "Primary Policy Declaration." Doc. 21 at ¶¶ 4–5.

After the collision with Tehrani, Piccirilli's counsel "made a demand," in February 2020, "for the [u]mbrella [p]olicy's purported 'policy limit' for" UIM coverage. Doc. 5 at ¶ 4 (citing doc. 5-3 at 1–2); doc. 16 at 2. "Piccirilli contends [that] the [u]mbrella [p]olicy provides up to $1,000,000 of" UIM coverage. Doc. 5 at ¶ 5 (citing doc. 5-3 at 1–2); doc. 16 at 2. In the demand letter, Piccirilli's counsel referenced both the umbrella policy and an automobile policy that Piccirilli had at the time of the accident. Doc. 15-4 at 10. He also explained what he found ambiguous in the two policies and stated that an "[a]mbiguity is construed in favor of the insured." *Id.* at 10–11.

The automobile that Piccirilli's counsel referenced was an automobile policy that another entity, Safeco Insurance Company of Illinois, issued Piccirilli. Doc. 15-4 at 12–60. That automobile policy has a policy number of Z4940246 and a policy period of December 21, 2018, to December 21, 2019. Doc. 21 at ¶ 1; doc. 15-4 at 24. It includes a declarations page that references UIM coverage and, for UIM coverage, limits of liability of $500,000 for each accident

5

involving a 2006 Chrysler and $500,000 for each accident involving a 2016 Kia.  Doc. 15-4 at 16; *see* doc. 21 at ¶¶ 7, 9.

In March 2020, Safeco's counsel responded to Piccirilli's counsel's letter.  Doc. 21-1 at 2–5.  That letter explained that Safeco "maintain[ed] its position that the umbrella policy is unambiguous and does not provide UIM coverage."  *Id.* at 2.  It further explained the claim-and-policy details and the reason that Safeco was denying coverage.  *Id.* at 2–4.

### B.      Procedural background

As noted, Piccirilli's car accident has led to three cases:  one in state court, this case, and another case in this court but before a different judge.  Doc. 1; Pet. Filed in Cir. Ct., *Tehrani v. Piccirilli*, No. 22SL-CC02442 (St. Louis Cnty. Cir. Ct. May 3, 2022); Notice of Removal at ¶¶ 4, 6–7, *Piccirilli v. Safeco Ins. Co. of Ill.*, 4:24-cv-01530-MTS (E.D. Mo. Nov. 14, 2024), doc. 1. In the instant case, Safeco seeks a declaratory judgment stating that Piccirilli's umbrella policy does not provide UIM coverage and that Safeco does not owe Piccirilli any UIM payments under the umbrella policy.  Doc. 1 at 4.  It also seeks an award of costs.  *Id.*

On the same day it filed the instant case, Safeco moved for summary judgment on its declaratory-judgment claim.  Doc. 4.  Piccirilli then moved to dismiss this case or alternatively to consolidate it with the other case in this court but before a different judge, and in light of her consolidation argument, Piccirilli moved to remand this case and the other case in this court to state court.  Doc. 15.  The Court denied Piccirilli's motions, doc. 32, and the other federal case has since been remanded to state court, Order of Remand, *Piccirilli v. Safeco Ins. Co. of Ill.*, 4:24-cv-01530-MTS (E.D. Mo. June 17, 2025), doc. 34.  The Court now takes up Safeco's motion for summary judgment.

## II.     Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)).  Self-serving, conclusory statements without support are insufficient to defeat summary judgment.  *Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.     Discussion

Safeco and Piccirilli dispute whether Piccirilli's umbrella policy provides UIM coverage. Docs. 4–6, 16–17, 21–22.  UIM coverage is "[a]utomobile insurance that protects against the insured's loss caused by a tortfeasor with insufficient liability-insurance limits to pay for the

insured's loss." *Coverage*, Black's Law Dictionary (12th ed. 2024).  The parties agree that

Missouri law governs the interpretation of the umbrella policy.  *See, e.g.*, doc. 6 at 3–5 (relying

exclusively on Missouri law); doc. 17 (same).  The Court therefore applies Missouri law to

determine whether Piccirilli's umbrella policy provides UIM coverage.

Under Missouri law, a court interpreting an insurance policy "gives the policy language

its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance."

*Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017) (citation

omitted).  "If the policy language is clear and unambiguous, it must be construed as written."  *Id.*

(citation omitted).  "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in

the meaning of the language in the policy.  Language is ambiguous if it is reasonably open to

different constructions."  *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017) (quoting

*Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007)).  Further, "'it is well-settled that

where one section of an insurance policy promises coverage and another takes it away, the

contract is ambiguous.'"  *Id.* (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132,

140–41 (Mo. 2009)).  Under this standard, the Court finds Piccirilli's umbrella policy

unambiguous to the extent it addresses UIM coverage.

As most insurance policies do, Piccirilli's umbrella policy begins with a declarations

page.  Doc. 5-1 at 8.  So, the Court begins there.  In doing so, the Court recognizes that Missouri

courts have stated time and again that that declarations pages do not grant any coverage but "are

introductory only and subject to refinement and definition in the body of the policy."  *See, e.g.*,

*Owners*, 514 S.W.3d at 617 (quoting *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 751 (Mo.

1987)).  In other words, declarations provide "the policy's essential terms in an abbreviated

form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to

determine the scope of coverage." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. 2014).

The umbrella policy's declarations page states several aspects of the policy, including whom Safeco insures ("Michael Piccirilli" and "Mary Piccirilli"); the policy period ("Dec. 21 2018" to "Dec. 21 2019"), the limit of liability ("$1,000,000"); the coverages provided ("Basic premium" for "one automobile and primary residence" and coverage for "2 Additional automobiles"); and the premiums for each of those coverages ("$208.00" and "$140.00," respectively).  Doc. 5-1 at 8–9 (emphases removed).  But the umbrella policy's declarations page makes no mention of UIM coverage.  *See id.*

The policy then provides the insuring agreement, which unambiguously states that Safeco "agree[s] to provide the insurance described in" the umbrella policy and that the insurance is "subject to the terms, conditions and limitations of" the umbrella policy.  *Id.* at 13.  After defining some terms, the umbrella policy lists the coverages it includes:  (1) personal liability, i.e., "the ultimate net loss in excess of the retained limit that the insured is legally responsible for because of covered bodily injury, personal injury or property damage caused by an occurrence"; (2) defense coverage, i.e., defense against a lawsuit in certain situations; and (3) supplementary payments, e.g., Safeco's expenses and "costs taxed against any insured in any suit [it] defend[s]." *Id.* at 15 (emphases removed).  Here too the umbrella policy is silent regarding UIM coverage.

In contrast, the next section of the policy unambiguously excludes UIM coverage from the scope of the policy:

This policy does not apply to any:

. . . .

**7.** amounts payable under any:

9

. . . .

      **b.** Uninsured Motorists or Underinsured Motorists coverage or any similar coverage, unless this policy is endorsed to provide such coverage as shown in the Declarations.

*Id.* at 15, 18–19. Piccirilli does not identify any policy endorsement providing UIM coverage. *See generally* docs. 16–17. Based on the policy as a whole, particularly its silence regarding UIM coverage except in an exclusion, the Court finds that the umbrella policy unambiguously does not provide UIM coverage.

Piccirilli resists this conclusion, asserting three primary arguments for why the umbrella policy provides UIM coverage. First, the umbrella policy incorporates by reference the declarations page of both the umbrella policy and the automobile policy. Doc. 17 at 3–4. Second, the umbrella policy does not comply with an alleged modern trend in caselaw that requires a declarations page to contain language directing an insured to read further to determine all terms, conditions, exclusions, and applicable reductions. *Id.* at 6. Third, Safeco did not respond to Piccirilli's letter addressing ambiguities that Piccirilli believed existed in her umbrella and automobile policies. *Id.* at 6–7. The Court addresses each argument in turn.

First, Piccirilli's argument regarding incorporation by reference. Piccirilli argues that the umbrella policy's insuring agreement incorporates by reference the umbrella policy's and the automobile policy's declarations page and therefore, because the automobile policy's declarations page discusses UIM coverage, the umbrella policy provides UIM coverage. *Id.* at 3–4. Piccirilli's incorporation-by-reference argument hinges on her belief that the umbrella policy's use of the word "declaration" in its plural form (both in the insuring agreement and the umbrella policy's declaration page) demonstrates that the umbrella policy refers to two declarations pages. *See id.*

In making this argument, Piccirilli correctly asserts that the insuring agreement states that "the Declarations[] . . . is a part of" the umbrella policy and that both the insuring agreement and the umbrella policy's declarations page use the word "declaration" in its plural form.  Doc. 5-1 at 8, 13.  These unremarkable observations, however, do not support the conclusion that the umbrella policy provides UIM coverage:  when read in context, the word "declarations" (when used in the declarations page and the insuring agreement) plainly refers to only the umbrella policy's declarations page.  In the insurance context, the term "declarations" can be either singular or plural, depending on the context in which it's used.  *See Johnson v. State Farm Mut. Auto. Ins. Co.*, 604 S.W.3d 875, 880–81 (Mo. Ct. App. 2020) (using "Declarations *Pages*" to refer to the declarations of multiple policies, but concluding that "Declarations Page" is "singular" in the context of the specific policy containing the language (emphasis added)).  Here, in context, "declarations" unambiguously is singular.

Beginning again with the umbrella policy's declarations page, it is titled "**SAFECO INSURANCE COMPANY OF AMERICA PERSONAL UMBRELLA POLICY DECLARATIONS**."  Doc. 5-1 at 8.  This use of the word "declarations" is the first time the word "declarations" appears.  *See* doc. 5-1 at 1–8.  Then, about halfway down the page, the word "declarations" appears a second time:

> **SCHEDULE OF UNDERLYING INSURANCE:**
> You, as defined in the policy contract, agree:
>> 1) that insurance policies providing the coverages specified on the back of these declarations, if applicable, are in force and will be maintained in force as collectible insurance for at least the required minimum limits stated.

*Id.* at 8.  In other words, when the word "declarations" appeared a second time, the word "declarations" had been used to refer only to the umbrella policy's declarations.  *See id.*

11

Zooming into the second use of the word, the sentence in which "declarations" appears creates a distinction between the umbrella policy's declarations and coverages specified in other insurance policies.  The sentence begins by drawing a distinction between "the policy contract" (the umbrella policy) and other insurance policies.  *Id.* ("You, as defined in the policy contract, agree[] . . . that insurance policies . . . if applicable, are in force and will be maintained in force as collectible insurance . . . .").  Then it states that the coverages specified in other insurance policies are "on the back of" something—"these declarations."  *Id.*  "[O]n the back of" thus draws a distinction between "these declarations," which discuss certain coverages (i.e., basic premium for "one automobile and primary residence" and coverage for two "[a]dditional automobiles in the household") and the coverages in other insurance policies.  *Id.*  Those other insurance policies include an insurance policy providing automobile-liability insurance.  *Id.* at 9.

Finally, the word "these" immediately precedes the word "declarations."  *Id.* at 8. "[T]hese," i.e., the plural form of "this," means "the person[s], thing[s], or idea[s] that [are] present or near in place, time, or thought or that has just been mentioned" or "the one[s] nearer or more immediately under observation or discussion."  *This*, Merriam-Webster, https://www.merriam-webster.com/dictionary/this#dictionary-entry-1 (last visited July 16, 2025). Again, the only "declarations" that had been mentioned before the relevant sentence are the umbrella policy's declarations.  Doc. 5-1 at 1–8.  The remainder of the declarations page and the back of it lack any reference to the declarations pages of other insurance policies or anything that could reasonably be interpreted as referring to such.  *Id.* at 8–9.  For these reasons, the Court finds that when used in the umbrella policy's declarations page, "these declarations" could draw to mind only the umbrella policy's declarations.

The Court finds that the same is true when the umbrella policy uses "declarations" in the insuring agreement.  There, the umbrella policy states:  "We [Safeco] agree to provide the insurance described in this policy . . . . The limit of our liability and the premiums are shown in the Declarations, which is a part of this policy."  *Id.* at 13.  The insurance agreement thus cabins the type of insurance that the umbrella policy provides to the insurance described in the umbrella policy and cabins Safeco's liability for that insurance to what's listed "in the Declarations."  *Id.* Preceding this mention of "declarations," the only use of the word occurred on the umbrella policy's declarations page, *see id.* at 1–13, which, as explained above, could reasonably be understood to refer to only the umbrella policy's declarations.

Finally, for the sake of completeness, the Court states what's likely obvious:  the umbrella policy and its declarations page lack any statement explicitly incorporating by reference the automobile policy's declarations page.  *See* doc. 5-1.

For these reasons, the Court finds that nothing in the umbrella policy supports the conclusion that the umbrella policy incorporates the automobile policy's declarations page.  The Court also notes that Piccirilli makes two ambiguity arguments that hinge upon her belief that the umbrella policy incorporates the automobile policy's declarations page.  *See* doc. 17 at 4–6. Because the Court holds that the umbrella policy does not incorporate the automobile policy's declarations page, the Court need not, and therefore does not, reach those arguments.

Second, Piccirilli's argument regarding the alleged modern trend in caselaw.  Piccirilli relies on *Progressive Max Insurance Company v. Hopkins*, 531 S.W.3d 649 (Mo. Ct. App. 2017), in asserting that the modern trend in caselaw requires a declarations page to contain language directing the reader to read further in the policy for all terms, conditions, exclusions, and applicable reductions, *see* doc. 17 at 6, which is a statement that her umbrella policy lacks,

13

*see* doc. 5-1 at 8.  In *Progressive*, the court addressed whether an insurance company "was entitled to set-offs from its" UIM "liability limit under the terms of its insurance policy." 531 S.W.3d at 650.  In concluding that the policy did provide for set-offs from UIM liability, the court noted that the policy's declarations page both listed UIM insurance and stated explicitly that the UIM coverage was "subject to all terms, conditions, exclusions and applicable reduction described in the policy."  *Id.* at 653 (emphasis removed).  The policy then unambiguously discussed set-offs from UIM liability.  *Id.*  The court did not, however, hold that a declarations page *must* contain language regarding the policy's containing all terms, conditions, exclusions, and applicable reductions.  *See id.*  Thus, Piccirilli has not identified any caselaw demonstrating that a declarations policy must contain such language.

Additionally, one case does not a trend make, and under Missouri law, the state Department of Insurance, not the courts, has statutorily delegated authority to regulate insurance policies:

> No insurer shall deliver any policy of private passenger automobile insurance[] . . . until such policy form shall have been approved as provided for in sections 375.920 to 375.923.  Upon submission of any form to the director of the department of commerce and insurance, such form shall be deemed approved.  The director of the department of commerce and insurance shall review such form within sixty days, and may have a hearing during that time.  If within that time he determines the policy form is not in compliance with the insurance laws of this state and does not contain such words, phraseology, conditions and provisions which are specific, certain and unambiguous and reasonably adequate to meet the needed requirements of those insured under such policies, he may file a petition with the administrative hearing commission asking that the policy be disapproved, stating specifically the reasons why such policy form shall be disapproved.

Mo. Rev. Stat. § 375.920; *see also* Mo. Rev. Stat. § 374.010 (charging the Department of Insurance "with the execution of all laws . . . in relation to insurance and insurance companies doing business in" Missouri).

14

Finally, Piccirilli's argument regarding Safeco's response to Piccirilli's counsel's letter. The record plainly belies Piccirilli's assertion that Safeco did not respond to her counsel's letter. Doc. 21-1.  Even so, Piccirilli fails to explain how counsel's letter, regardless of any response, could modify the terms of the policy.  *See* doc. 17 at 6–7 (insinuating that counsel's alleged lack of response violated the Missouri Improper Claims Practices Act, Missouri Revised Statute § 375.1005, but failing to advance any argument as to how counsel's conduct could modify the policy).  Thus, none of Piccirilli's arguments establish that the umbrella policy provides UIM coverage.

## IV.    Conclusion

For these reasons, the Court grants Safeco's [4] Motion for Summary Judgment.  A separate order of judgment accompanies this order.

So ordered this 16th day of July 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE